## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TEAMSTERS LOCAL 639 EMPLOYERS
HEALTH TRUST *et al.*,

     Plaintiffs,

     v.

BOILER & FURNACE CLEANERS, INC.,

     Defendant.

Civil Action No. TDC-15-3053

## MEMORANDUM OPINION

This case alleging payments owed under a collective bargaining agreement is before the Court on a Motion for Default Judgment. Having reviewed the Complaint, the Motion, and the supporting documents, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is granted in part and denied in part.

## BACKGROUND

Plaintiffs are the Teamsters Local 639 Employers Health Trust ("Health Fund"), the Teamsters Local 639 Employers Pension Trust ("Pension Fund"), and their respective trustees. The Health Fund is an employee welfare benefit plan and multiemployer plan, as those terms are defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (2012). *See id.* § 1002(1), (3), (37)(A). The Pension Fund is an employee pension benefit plan and multiemployer plan, as those terms are defined in ERISA. *See id.* § 1002(2), (3), (37)(A). Defendant Boiler & Furnace Cleaners, Inc. ("Boiler & Furnace Cleaners"), a company engaged in an industry affecting commerce, is an employer for purposes of ERISA. *See id.* § 1002(5).

Boiler & Furnace Cleaners is required to make regular contributions to the Health Fund and Pension Fund pursuant to its current collective bargaining agreement ("CBA") with the Drivers, Chauffeurs and Helpers Local Union No. 639 ("Union") and was also required to make regular contributions under prior CBAs with the Union. The current CBA covers the period from October 16, 2014 through October 15, 2017; the previous CBA covered the period from October 16, 2013 through October 15, 2014; and another prior CBA covered the period from October 16, 2010 through October 15, 2013. By the terms of these agreements, Boiler & Furnace Cleaners must make contributions to the Health Fund and Pension Fund at rates specified in the CBAs for each hour or portion thereof for which an employee actually performed work.

The CBAs also provide that Boiler & Furnace Cleaners agrees to be bound by the Agreement and Declaration of Trust for each of the Health Fund and the Pension Fund ("Trust Agreements"). The Trust Agreements provide that an employer who fails to pay timely the amounts required by the CBAs must pay 10 percent of the amount due in liquidated damages and 1.5 percent of the amount due in interest. The Trust Agreements further specify that if the trustees must initiate a legal action to compel payment of delinquent contributions, the employer also becomes liable for attorney's fees and costs, as well as additional liquidated damages of 10 percent of the amount due.

On October 7, 2015, Plaintiffs filed this action, alleging that Boiler & Furnace Cleaners has been delinquent in making its required payments to the Health Fund and the Pension Fund. Specifically, the Complaint asserted that Boiler & Furnace Cleaners failed to pay an unspecified amount in contributions, liquidated damages, and interest for the month of August 2015 and that the employer owes liquidated damages and interest for prior late payments for certain months

2

from July 2013 through July 2015. Plaintiffs also claim that Boiler & Furnace Cleaners owes liquidated damages of $4,341.19 and interest of $334.71 to the Health Fund, as well as liquidated damages of $7,198.80 and interest of $257.18 to the Pension Fund, for late payments for certain months from July 2013 through July 2015. In addition, they seek attorney's fees and costs.

Boiler & Furnace Cleaners was served with the Complaint on October 9, 2015 but has failed to file a timely responsive pleading. The Clerk entered default against Boiler & Furnace Cleaners on April 6, 2016. To date, Boiler & Furnace Cleaners has not responded to that default or to the Plaintiffs' Motion for Default Judgment.

## DISCUSSION

The Motion for Default Judgment seeks an order entering judgment against Boiler & Furnace Cleaners for liquidated damages and interest for "late payments for certain months from June 2013 through February 2016," Mot. Default J. Aff. Nichelle Grey ¶¶ 10-11, ECF No. 10-2, as well as attorney's fees and costs. In addition, Plaintiffs request that the Court "enter a permanent injunction requiring Defendant to remit its contributions to the Health Fund and Pension Fund in a timely manner." Mem. Supp. Mot. Default J. at 8, ECF No. 10-1. Plaintiffs state in their Motion that since the filing of the Complaint, Boiler & Furnace Cleaners has paid its contributions for the month of August 2015.

### I.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P.

55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688 (3d ed. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780-81.

In calculating damages, the court does not accept as true the factual allegations of the plaintiff but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.      Liability

Because Boiler & Furnace Cleaners has failed to appear or otherwise defend, the Court accepts as true the well-pleaded factual allegations in the Complaint. *Ryan*, 253 F.3d at 780. Those allegations establish that Boiler & Furnace Cleaners was obligated by the terms of the CBAs and Trust Agreements to make timely contributions to the Health Fund and the Pension Fund for any hours worked by covered employees and that Boiler & Furnace Cleaners failed to make timely contributions for the period from July 2013 to August 2015. The Complaint therefore establishes that Boiler & Furnace Cleaners is liable to Plaintiffs for damages arising from the late contributions, as defined in the governing agreements.

## III.     Damages

By the terms of the agreements between the parties, Boiler & Furnace Cleaners is liable to Plaintiffs for: (1) any unpaid contributions, (2) interest on delinquent contributions at the rate of 1.5 percent of the amount due, (3) liquidated damages in a total amount of 20 percent of the delinquency, and (4) attorney's fees and costs incurred in attempting to recover the amounts

owed.  These provisions track ERISA itself, which provides that employers who fail to timely make contributions are liable for:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>> (i)  interest on the unpaid contributions; or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  Plaintiffs are therefore entitled under ERISA and the terms of the parties' agreements relating to interest, liquidated damages, and attorney's fees and costs.

As to specific amounts, in the Motion for Default Judgment, Plaintiffs assert that Boiler & Furnace Cleaners owe:  (1) liquidated damages of $6,735.50 and interest of $560.50 to the Health Fund for the period of June 2013 through February 2016; and (2) liquidated damages of $9,706.16 and interest of $423.26 to the Pension Fund for the period of June 2013 through February 2016.  In support of these damages, Plaintiffs rely on the Affidavit of Nichelle Gray, an administrator of the Health Fund and Pension Fund, attached to the Motion, as well as the Supplemental Grey Affidavit and accompanying exhibit submitted pursuant to the Court's November 28, 2016 Order.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).  Here, Plaintiffs in their Complaint sought a specified amount of damages for liquidated damages and interest allegedly

6

owed to the Health Fund and Pension Fund during the period between July 2013 and July 2015. The Court therefore will award only the damages owed for delinquent payments during this period and for the month of August 2015, for which Plaintiffs seek an unspecified amount in their Complaint.   The Supplemental Grey Affidavit and accompanying exhibit confirm the accuracy of the following damages owed by Boiler & Furnace Cleaners:  (1) liquidated damages of \$4,341.19 and interest of \$334.71 owed to the Health Fund for the period from July 2013 to July 2015; (2) liquidated damages of \$681.10 and interest of \$67.18 owed to the Health Fund for August 2015; (3) liquidated damages of \$7,049.77 and interest of \$257.18 owed to the Pension Fund for the period from July 2013 to July 2015; and (4) liquidated damages of \$649.74 and interest of \$49.39 owed to the Pension Fund for August 2015.

Plaintiffs also request in their Motion a "permanent injunction requiring Defendant to remit its contributions to the Health Fund and Pension Fund in a timely manner."  Mem. Supp. Mot. Default J. at 8.  They did not, however, request such relief in their Complaint.  Accordingly, the request for a permanent injunction shall be denied. *See* Fed. R. Civ. P. 54(c).

Finally, Plaintiffs seek attorney's fees and costs.  In support of their request, Plaintiffs submit the declaration of attorney Lauren P. McDermott, accompanied by an exhibit that details the legal services rendered for the case, the date the services were performed, the individual who performed the services, and the time expended.  McDermott attests that she worked on this case and was assisted by John R. Mooney, Elizabeth A. Saindon, Diana M. Bardes, a paralegal, and a law clerk.  McDermott and Bardes are both associates in their fifth year of practice; John R. Mooney is a partner with over 30 years of experience; and Elizabeth A. Saindon is a partner with over 25 years of experience.  The documents indicate that counsel spent 20.4 billable hours on this case at a rate of \$410 per hour for partners and \$290 per hour for associates, a paralegal

7

spent 9.9 hours of billable time at a rate of $150 per hour, and a law clerk spent 6.7 hours of billable time at a rate of $90 per hour, for a total of $8,172. This Court's Guidelines Regarding Hourly Rates advise hourly billing ranges of $150-225 for counsel with less than five years of experience, $165-300 for counsel with 5 to 8 years of experience, $300-475 for counsel with 25 years or more of experience, and $95-150 for paralegals and law clerks. *See* D. Md. Local R. App. B ¶ 3. The submission also documents $455 in costs.

The Court accepts the proposed hourly rates, with the exception of the associate hourly rate, which will be reduced to $225, in accordance with this Court's Guidelines. As a result, the attorney's fee award is $6,937. With that adjustment, the Court finds that the attorney's fees and costs are reasonable. The Court therefore awards the Plaintiffs $7,392 in attorney's fees and costs, as delineated above.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is GRANTED IN PART and DENIED IN PART. The Motion is granted as to damages for the period from July 2013 through August 2015 and attorney's fees and costs. The Motion is denied as to damages for the period from September 2015 through February 2016 and the permanent injunction. Plaintiffs are awarded a total of $20,822.26, as specified in the separate Order accompanying this Memorandum Opinion.

Date:  December 19, 2016

THEODORE D. CHUANG
United States District Judge